IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UTAH EDUCATION ASSOCIATION, et al., <br><br>   Plaintiffs, <br><br> vs. <br><br> MARK SHURTLEFF, in his official capacity as Attorney General for the State of Utah, <br><br>   Defendant. | ORDER <br><br> AND <br><br> MEMORANDUM DECISION <br><br> Case No. 2:03-CV-1100 TC |

Section 34-32-1.1(2)(g) of the Utah Code ("the Statute") makes it unlawful for any public employer in Utah to grant an employee's request to make voluntary contributions through payroll deductions to political funds sponsored by labor organizations. The Plaintiffs are five labor organizations and one association of labor organizations. They have filed this declaratory action against Mark Shurtleff, the Attorney General of the State of Utah, claiming that the Statute violates the First Amendment, insofar as it applies to municipalities, counties, school districts, and other local public employers.

The court concludes that the Statute is a content-based restriction on free speech, subject to strict scrutiny. Because the State has not shown that the Statute is narrowly tailored to serve a compelling state interest, the court agrees with the Plaintiffs and finds that the Statute is unconstitutional.

## ANALYSIS[1]

**A.     The Statute is Subject to Strict Scrutiny.**

Laws that are content-based (that is, laws that restrict speech only on specified subjects) trigger strict scrutiny. See, e.g., Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd., 502 U.S. 105, 116-18 (1991); Consolidated Edison Co. of NY v. Public Serv. Comm'n of NY, 447 U.S. 530, 537-38 (1980). The Statute reads in relevant part that "[a] public employer may not deduct from the wages of its employees any amounts to be paid to . . . any entity established by a labor organization to solicit, collect, or distribute monies primarily for political purposes as defined in this chapter." Utah Code Ann. § 34-32-1.1(2)(g). "Political purposes" is defined as an "an act done with the intent or in a way to influence or tend to influence, directly or indirectly, any person to refrain from voting or to vote for or against any candidate for public office at any caucus, political convention, primary, or election." Id. § 34-32.1.1(1)(b).

The Statute only prohibits payroll deductions for political purposes. The Plaintiffs contend, and the court agrees, that the Statute is content-based. The State points out, correctly, that the Statute "draws no distinction based on the political message or viewpoint of the organization." (Def.'s Opp'n Mem. 11.) But the fact that the Statute is viewpoint neutral makes no difference. A content-based regulation is subject to strict scrutiny, even though it does not favor any particular viewpoint. Consolidated Edison, 447 U.S. at 536-38.

The State argues that the payroll systems are its property, that they are private forums, and therefore, strict scrutiny is not appropriate. But neither the facts nor the applicable law supports

---

[1]The parties have stipulated to the material facts. (See Stipulation of Facts, Dkt. # 11.)

the State's argument. The parties have stipulated that the payroll systems are maintained and administered by the public employers, not the State (Stipulation of Facts ¶ 9.) Moreover, state law indicates that the payroll systems of the counties, cities and school districts that employ the members of the Plaintiffs are the property of those local entities, not of the State, and are under the direction and control of the local governments. See, e.g., Utah Code Ann. §§ 53A-2-108(2) ("The local school board shall have direction and control of all school property in the district."); 53A-2-105(2) ("Title to [school] property . . . vests in the . . . [local] board of education"); 10-8-1 ("The boards of commissioners and city councils of cities shall have the power to control finances and property of the corporation"); 10-8-2(1)(a)(ii) ("A municipal legislative body may . . . purchase, receive hold, sell, lease, convey, and dispose of real and personal property for the benefit of the municipality."). Despite this, the State contends that because it has "plenary power" over the local governments, including the power to create the local governments, then it is the owner of the payroll systems. (Def.'s Mem. Opp'n Mot. Summ. J. 5-7.)

The Supreme Court has rejected a similar argument. In Consolidated Edison Co. of NY, Consolidated Edison, a public utility company, claimed that an order of the New York Public Service Commission—which prohibited Consolidated Edison from including in its monthly bills inserts advocating the development of nuclear energy—violated the First Amendment. 447 U.S. at 532-33. The Court acknowledged that Consolidated Edison was a government-regulated monopoly and that the State of New York had "a legitimate regulatory interest in controlling Consolidated Edison's activities . . . ." Id. at 540. Still, the Court did not agree with the State's argument that "the billing envelope [in which the inserts were placed], as a necessary adjunct to the operations of a public utility, is subject to the State's plenary control." Id. Further, the Court

made clear that the State could not rely on "precedent that rests on the special interests of a government in overseeing the use of its property." Id.

Just like the State of New York did, the State of Utah relies on cases where courts upheld restrictions placed by governments on their own property, particularly the decision in Cornelius v. NAACP Legal Defense & Education Fund, Inc., 473 U.S. 788 (1985). But Cornelius and similar cases do not apply here.

In Cornelius, the NAACP and other plaintiffs claimed that the federal government's decision to exclude them from participating in the Combined Federal Campaign ("an annual charitable fund-raising drive conducted in the federal workplace") was a violation of the First Amendment. Id. at 790, 793. The Court disagreed, "[r]ecognizing that the Government, 'no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated . . . .'" Id. at 800 (emphasis added) (quoting Greer v. Spock, 424 U.S. 828, 836 (1976)). The significant factual distinction between Cornelius and this case is that the payroll systems at issue here are not the property of the State of Utah.

Given that distinction, the "forum analysis" used by the Court in Cornelius,[2] and which the State of Utah contends applies, is not appropriate in this case. The Plaintiffs in this case are not challenging the State's decision to prevent the State's payroll system from being used to

---

[2] "Even protected speech is not equally permissible in all places and at all times. Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities. . . . [T]he Court has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." Cornelius, 473 U.S. at 799-800 (emphasis added).

make political contributions.  Instead, the Plaintiffs are challenging the State's decision (expressed in the Statute) to prevent local public employers from granting an employee's request to make voluntary contributions through payroll deductions to political funds sponsored by labor organizations.[3]

**B.     The  State Has Not Shown that the Statute Is Narrowly Tailored to Serve a Compelling State Interest.**

Because strict scrutiny is applicable, "'the State must show that its regulation is necessary to serve a compelling state interest and is narrowly drawn to achieve that end.'" Simon & Schuster, 502 U.S. at 118 (quoting Arkansas Writers' Project v. Ragland, 481 U.S. 221, 231 (1987)).  Although the State of Utah advances several arguments in support of its contention that the Statute serves a legitimate government purpose, the court concludes that the State has not met its burden.

The State argues that the Statute merely reflects a decision not to subsidize the process of political contributions and that the State is not required by the First Amendment to devote its resources to collect political contributions from its employees.  But the State incurs no expense as a result of the payroll deductions.  And the local employer can require the employee or the union to bear the cost of the deduction (which the parties have agreed is "slight" (Stipulation of

---

[3]The Sixth Circuit upheld a statutory prohibition on payroll deductions of political contributions that applied to all public employers, including local governments.  Toledo Area AFL-CIO Council v. Pizza, 154 F.3d 307, 312 (6th Cir. 1998).  But, apparently because the plaintiffs in Pizza had unrelated reasons not to acknowledge the difference between state and local employees, they did not raise the argument that there was a difference between the ownership of state payroll systems and those belonging to local governments.  (See Pls.' Reply Mem. Supp. Mot. Summ. J. 3 n.1.)  Accordingly, the court does not find the Pizza decision persuasive.

Facts ¶ 16)).

The State also asserts that the Statute is a guard against the perception that labor organizations enjoy preferential treatment by the government.  But the State has not pointed to anything in Utah law that prohibits public employers from allowing employees to use payroll deductions to make contributions to other entities.  And the State offers no evidence to support its position that public employers have given preferential treatment to labor organizations.

The final justification given by the State is that the Statute prevents political pressures on public employees and protects public employers from the problems of picking and choosing which political entities are "worthy (or unworthy) of a payroll deduction benefit. . . ."  (Def.'s Opp'n Mem. 14.)  Again, as part of this argument, the State argues that the Statute prevents "partisan political activities [in] the workplace" and "inhibit[s] the entanglement of public employers with the partisan, political activities of private actors."  (Id. at 16.)  But there is nothing in the record that shows that the practice of voluntary payroll deductions has ever been the cause of political pressure or that public employers have become "entangled" with private political activities as a results of payroll deductions.  In fact, it appears that allowing an employee to make the decision to contribute to a political activity by means of payroll deductions is a private matter between the employer and employee.

Even if the concerns raised by the State had some evidentiary support for an absolute ban on voluntary payroll contributions, the State has not shown how the Statute is narrowly tailored to address these concerns.

**ORDER**

For the foregoing reasons, the Plaintiffs' Motion for Summary Judgment is GRANTED.

DATED this 3rd day of May, 2006.

> BY THE COURT:
>
> *Tena Campbell*
>
> TENA CAMPBELL
> United States District Judge